# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| DUSTIN CLARK | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | 3:18-cv-00678 |
| THE CLARKSVILLE HOUSING AUTHORITY | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

There are two sides to every coin, and so it is with lawsuits. On the one hand, Dustin Clark claims that he was fired from his job with the Clarksville Housing Authority ("CHA") because he requested medical leave or an accommodation, and his subsequent termination violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§260, *et. seq.*; the Americans With Disabilities Act ("ADA"), 42 U.S.C.§§12101 *et seq*; and/or the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103. On the other, CHA argues that Clark's medical condition had absolutely nothing to do with his termination – he was fired instead because of his dismal work performance. Thus, CHA asserts it is entitled to summary judgment on all of Clark's claims.

Although the parties disagree as to why Clark was fired, they agree on a handful of relevant facts, including the following: On March 4, 2013, Clark was hired as a property manager by CHA. At the time, Wanda Mills was CHA's Executive Director. When hired, Clark told Mills that he had a disability, specifically a severe burn to his right foot and a partially amputated big toe that required continued medical attention. Mills regularly granted Clark an accommodation for his ailment, including allowing him to take time off of work for medical treatments.

On December 12, 2016, Clark received his annual evaluation and was given the rating of

"superior" for each of the 12 categories on the form. This included "attendance," and "productivity." At the bottom of the form, Mills wrote" "Excellent employee. Great management skills." (Doc. No. 20-5 at 1). A couple of weeks later, Mills retired as Executive Director. In her place, Clark and Terry Davis, a CHA accountant, were named "Co-Interim Directors."

On September 13, 2017, Clark was removed from his co-director position and demoted back into the position of Property Manager. The next day he was informed he was being terminated. Exactly what happened during the several days surrounding these events is the subject of much debate between the parties.

Clark claims that on September 13, he received a call from Dr. Jeannie Beauchamp, a dentist, who was on CHA's Board of Commissioners. According to Clark, Dr. Beauchamp expressed concerns about his absenteeism, and told him that if he "couldn't be on time at work from here on out, she would personally remove [him] from CHA as an employee[.]" (Doc. No. 20-1, Clark Depo. at 32). Concerned by this conversation and his recent demotion, Clark approached Davis (who was now his supervisor) and asked her for permission to take the following day off so that he could see his doctor and request FMLA paperwork. Davis granted that request.

On September 14, 2017, Clark went to see his physician. The doctor completed FMLA paperwork, and Clark texted Davis and told her he had received that paperwork. Clark then returned a missed phone call from Dr. Beauchamp and was told by her that because he had not been at work, CHA was "moving forward with his termination." (Id.).

CHA insists Clark has it all wrong. Beauchamp did not make the decision to terminate Clark because he missed work and had a disability. Rather, the Board of Commissioners made that decision at a meeting on September 12, 2017, based upon Clark's poor work performance.

2

Beauchamp was simply the messenger.

Clark's alleged shortcomings were documented in a letter that identified "poor performance" or "lack of performance" in various areas, including "security camera addition project"; "communication with vendors, tenants, and co-workers"; "office security project and time clock installation"; "internet access for maintenance shop"; "creation of a Housing Authority web site"; "correcting foundation issues for tenant unit"; and "overall poor work habits and administrative ability." The letter was dated September 14, 2017, and signed by "Terry Davis, Interim Executive Director." (Doc. No. 17-2 at 3). Because the decision to terminate was allegedly made *before* Clark went to the doctor to ask for FMLA paperwork, CHA argues Clark cannot establish discrimination or retaliation and therefore summary judgment is warranted.

In the absence of direct evidence of unlawful conduct, disability discrimination claims under the ADA are evaluated according to the familiar tripartite McDonnell Douglas burden-shifting framework, Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008), as are claims for retaliation under the FMLA, Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012). The same is true for disability claims under the TDA. Tenn. Code Ann. § 4-21-311(e). Recently, the Sixth Circuit summarized the operative framework for analysis:

> McDonnell Douglas first requires the plaintiff to establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If []he can, the burden shifts to the defendant, who must produce legitimate, nondiscriminatory reasons for the adverse employment action. Id. And if the employer can produce those reasons, the burden shifts back to the plaintiff to establish that the proffered reasons are simply pretext for [discrimination or retaliation]. Id. at 804. If the plaintiff satisfies this third step, the factfinder may reasonably infer discrimination.

Miles v. S. Cent. Human Resource Agency, Inc., ___ F.3d ___, Slip op. No. 19-5202 at 4 (6th Cir. Jan. 7, 2020). In conducting this analysis "[a]t the summary judgment stage, [the] facts must be

3

viewed in the light most favorable to the nonmoving party [when] there is a "'genuine' dispute as to those facts," Scott v. Harris, 550 U.S. 372, 380 (2007), and the burden is on the movant to show "that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Viewed with this prism, summary judgment cannot be granted based upon the evidence before the Court.

Clark has provided sufficient evidence to support a *prima facie* case, particularly because that burden "is not onerous, but one easily met." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). In Clark's last annual employment review, he was rated an exemplary employee in all areas, including attendance. CHA has also provided a legitimate, non-discriminatory reason for Clark's discharge – poor work performance. And, because the decision had been made to terminate Clark before he decided to visit the doctor, CHA insists there is no temporal proximity and no basis to establish pretext.

Critical to CHA's position is that the decision to terminate was made on December 12, 2017. However, the only support CHA points to in the record for this is an Affidavit signed and "submitted by" John Feeney, CHA's counsel, that attaches a "Verification" from Patricia Tyus, CHA's present Executive Director. In the Verification, Tyus "confirm[s] the statements made within the attached affidavit are true according to the best of [her] knowledge, information and belief." (Doc. No. 17-2 at 2). The referenced Affidavit states:

> 1. I am the Executive Director of Defendant The Clarksville Housing Authority.
>
> 2. The Clarksville Housing Authority is governed by its Board of Commissioners.
>
> 3. At a Board of Commissioners meeting held on September 12, 2017, the Board of Commissioners decided to terminate the employment of Dustin Clark and that Mr. Clark would be personally notified of his termination by Board member Dr. Jeannie Beauchamp.

4

> 4. The grounds for termination were documented in a letter to Mr. Clark dated September 14, 2017. . . . The letter was sent via certified mail, return receipt requested September 14, 2017, and signed for by Mr. Clark September 19, 2017.

(Doc. No. 17-2 at 1). For purposes of summary judgment, this is woefully insufficient to establish as a fact that the decision was made on December 12, 2017.

Rule 56 of the Federal Rules of Civil Procedure requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Tyus does not show she is competent to testify as to what occurred during the September 12, 2017 Commissioner meeting. In fact, Clark claims – and CHA does not dispute – that Tyus was not at the meeting and that Tyus did not even work for CHA at that time. While Tyus is now the Executive Director, she does not claim to have looked at the minutes or other records to see what transpired at the meeting. All she did is "verify" what counsel wrote in the affidavit and would likely not be admissible at trial.

Contrary to CHA's assertion, Tyus's affidavit is not saved by her verification that the statements made in the affidavit are "true to the best of my knowledge, information and belief." (Doc. No. 23 at 2). "An affiant's 'statement . . . based upon his 'belief' . . . [does] not demonstrate the personal knowledge required by [Rule 56].'" Ondo v. City of Cleveland, 795 F.3d 597, 604–05 (6th Cir. 2015) (brackets in original) (quoting Alpert v. United States, 481 F.3d 404, 409 (6th Cir. 2007)). Nor does an affidavit "made to the best of my knowledge" establish specific personal knowledge. McNeil v. Sonoco Prod. Co., No. 16-6304, 2017 WL 3725360, at *2 (6th Cir. May 23, 2017). For all the Court knows, Tyus's "knowledge, information and belief" may have come from the drafter telling her that the termination decision was made at the September 12, 2017 meeting.

5

This is hearsay and does not constitute personal knowledge by Tyus.

In this case as in many others alleging retaliation or discrimination, "[t]he ultimate inquiry is 'did the employer fire the employee for the stated reason or not?'" Amos v. McNairy Cty., 622 F. App'x 529, 539 (6th Cir. 2015) (quoting Tingle v. Arbors at Hilliard, 692 F.3d 523, 530 (6th Cir.2012)). Because the record does not definitively answer that question, CHA's Motion for Summary Judgment (Doc. No. 17) must be, and hereby is, **DENIED**. The jury will resolve this dispute on **March 17, 2020**. Prior to trial the parties shall engage in mediation.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE